Filed 11/1/22 P. v. Gomez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Glenn)

----

| | |
|---|---|
| THE PEOPLE, | C095518 |
| Plaintiff and Respondent, | (Super. Ct. No. 20CR15666) |
| v. | |
| ANNELISSA CHRISTINE GOMEZ, | |
| Defendant and Appellant. | |

After a court trial, defendant Annelissa Christine Gomez was found guilty of attempting to smuggle contraband into a conservation camp.  Defendant appeals, contending she did not provide a knowing, voluntary, and intelligent waiver of her right to a jury trial.  We conclude defendant's jury waiver was knowingly, voluntarily, and intelligently made under the totality of the circumstances.  We therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant sat in the back seat of a vehicle when, approximately a mile away from Valley View Conservation Camp (camp), police officers pulled the vehicle over.  Inside the vehicle, police officers found a reusable grocery bag containing alcohol, tobacco,

1

rolling papers, vape pens, and marijuana. One of the police officers recognized defendant from her prior visits to her husband, Misael Gomez, who was an inmate at the camp. The officer suspected defendant was planning to smuggle the contraband items in the grocery bag into the camp by giving them to her husband. Concurrently, at the camp, defendant's husband was interviewed and responded with incriminating statements, confirming he knew the contents of the grocery bag and he intended to meet his wife at a specific location to obtain the contraband from her.

Defendant was charged with one count of attempted smuggling of contraband into a conservation camp. Defendant had prior traffic infractions but no prior convictions.

At the trial readiness conference, defense counsel entered a jury waiver. Defense counsel advised the court that he and defendant had discussed "the difference between a jury trial and a trial by court" and defendant wanted to waive her right to a trial by jury. The trial court asked defendant if that was correct and whether she had an opportunity to speak with her attorney about the difference between a court trial and a jury trial. Defendant responded in the affirmative to both questions. The trial court further asked defendant if she "underst[ood] the difference is that twelve people sit in judgment with you in a jury trial, and only one person would sit in judgment on a court trial?" Defendant responded, "[y]es." The trial court confirmed defendant and the prosecution wanted to waive the right to a jury trial and then accepted the waiver, "find[ing] it's been knowingly and intelligently done."

After finding defendant guilty of attempting to smuggle contraband into a conservation camp, the trial court sentenced defendant to two years of probation, including 90 days to be served either in Glenn County Jail or on electronic home monitoring, and ordered her to pay a fine and multiple assessments totaling $890. Defendant appeals.

DISCUSSION

Defendant asserts her jury waiver was not knowingly and intelligently made because: (1) the trial court did not advise her that she could participate in jury selection through counsel or that the 12 jurors would have had to reach a unanimous decision; (2) neither the trial court nor defense counsel advised her that the trial court would consider defendant's husband's full confession, which incriminated her; and (3) defendant had no prior significant experience with the criminal justice system.

The People argue the record shows defendant validly waived her right to a jury trial based on her discussions with counsel, the trial court's clarifying advisement and questions, and defendant's active participation in her defense. The People further argue that defendant's reliance on *Jones* is misplaced, and her argument regarding evidentiary matters pertaining to her husband's statements does not inform whether her jury waiver was valid. (*People v. Jones* (2018) 26 Cal.App.5th 420.)

We conclude, based on the totality of the circumstances, defendant's jury trial waiver was made knowingly, voluntarily, and intelligently.

A criminal defendant has a constitutional right to a jury trial. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 16; *People v. Sivongxxay* (2017) 3 Cal.5th 151, 166 (*Sivongxxay*).) A defendant may waive the right to a jury trial through an express waiver in open court. (Cal. Const., art. I, § 16; *People v. Collins* (2001) 26 Cal.4th 297, 308.) For the waiver to be deemed valid, the record must affirmatively show that the waiver was "knowing and intelligent, that is, ' " 'made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it,' " ' as well as voluntary ' " 'in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.' " ' " (*Collins*, at p. 305.)

Our Supreme Court "has not mandated any specific method for determining whether a defendant has made a knowing and intelligent waiver of jury trial in favor of a bench trial." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 167.) Instead, whether a defendant

3

enters a jury waiver knowingly and intelligently is examined under the totality of the circumstances. (*Ibid.*; *People v. Daniels* (2017) 3 Cal.5th 961, 991.)

On appeal, the reviewing court examines the trial court's colloquy with the defendant before the trial court accepted the waiver. (*People v. Daniels*, *supra*, 3 Cal.5th at p. 991.) Our Supreme Court "recommend[s] that trial courts advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through . . . counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide . . . guilt or innocence." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 169.) These guidelines are, however, merely advisory, and not meant "to limit trial courts to a narrow or rigid colloquy." (*Id*. at p. 170.) The trial court must consider "a defendant's individual circumstances" to determine if the waiver is knowingly and intelligently made. (*Ibid*.) A factor for consideration in that regard is whether the defendant was represented by counsel and whether the record contains "references to discussions between counsel and defendant." (*People v. Daniels*, *supra*, 3 Cal.5th at pp. 991, 996.) That is because "[c]ounsel plays a crucial part in transmitting information to the client." (*Id*. at p. 996.)

Here, defendant, through her counsel, advised the trial court that defendant wanted to enter a jury trial waiver. The jury waiver discussion was thus broached and advanced by *defendant*, indicating she was actively involved in her jury waiver. Defense counsel affirmatively stated that he had discussed with defendant "the difference between a jury trial and a trial by court." Defendant did not dispute that statement. The trial court then engaged in a colloquy prior to accepting the waiver. The trial court confirmed defendant understood the main difference between a jury trial and a bench trial, i.e., the number of individuals who "*sit in judgment*." (Italics added.) The trial court also confirmed that, as stated by defense counsel, defendant had previously spoken to her attorney "about the difference between a court trial and a jury trial." We conclude the record demonstrates

4

defendant freely and deliberately made the waiver " ' " 'with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.' " ' " (*People v. Collins*, *supra*, 26 Cal.4th at p. 305.)

Relying on *Jones*, defendant argues her jury waiver was constitutionally infirm because the trial court failed to mention two "*features* of a jury trial" (i.e., "that [defendant could] participate in jury selection through counsel, and that the twelve jurors must unanimously agree to render a verdict") and defendant had minimal prior experience with the criminal justice system. (Citing *People v. Jones*, *supra*, 26 Cal.App.5th at p. 420.) We are not persuaded. While the colloquy between the trial court and defendant did not expressly include each of the advisory guidelines discussed by our Supreme Court in *Sivongxxay*, "a trial court's adaptation of or departure from the recommended colloquy in an individual case will not necessarily render an ensuing jury waiver invalid." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 170.) Indeed, under the totality-of-the-circumstances standard, the presence or absence of a reference in a colloquy to a particular attribute of a jury trial (e.g., the requirement that the jury be impartial or reach a unanimous decision) is not necessarily determinative of whether a waiver meets constitutional standards. (See *id*. at p. 168.)

*Jones* is further distinguishable. Unlike in the present case, the *prosecutor* in *Jones* handled the entire advisement, while the court had no role. (*People v. Jones*, *supra*, 26 Cal.App.5th at p. 428.) The colloquy between the defendant and the prosecutor consisted of two questions: whether the defendant understood his right to a jury trial, and whether he agreed to have the judge decide the case. (*Ibid*.) In contrast, here: the prosecutor played no role in the advisement and agreed only to the waiver; defendant agreed that she and her attorney had already discussed the difference between a jury trial and a court trial; and the court confirmed that defendant understood the main difference between the two types of trials by specifically indicating that a jury trial has 12 individuals sitting in judgment, whereas a court trial has one. The only similarity

between this case and *Jones* is that defendant does not have much experience with the criminal justice system, like the defendant in *Jones*. (*Id.* at p. 437.) That single similarity does not, however, render this case analogous to *Jones*; the totality of the circumstances here is wholly different and weighs in favor of finding the jury waiver was knowingly and intelligently made.

We also find no merit in defendant's reliance on footnote 12 in *Jones*. In that footnote, the court addressed the defendant's argument that "she did not make a knowing waiver because she was not advised that the trial court would hear her codefendant['s] . . . statements that incriminated her, whereas in a jury trial the jury would not." (*People v. Jones*, *supra*, 26 Cal.App.5th at p. 435 & fn. 12.) The court noted the defendant was referring to the rule that a " 'nontestifying codefendant's extrajudicial statement that incriminates the other defendant is inadmissible at a joint trial.' " (*Id.* at p. 435, fn. 12, quoting *People v. Penunuri* (2018) 5 Cal.5th 126, 154.) The court explained that, because Jones's waiver was not knowingly and intelligently made, it did not need to "reach whether a defendant's lack of knowledge about this type of consequence should be considered as part of the totality of the circumstances affecting the validity of a jury trial waiver." (*Jones*, at p. 435, fn. 12.)

Defendant asserts the footnote in *Jones* establishes that she could not have entered a knowing and intelligent jury waiver because, like the defendant in *Jones*, she was not advised that the trial court would hear her codefendant's statement(s) that incriminated her while a jury would not have heard such statements. The footnote stands for no such proposition.

First, the *Jones* court did not consider whether "a defendant's lack of knowledge about this type of consequence should be considered as part of the totality of the circumstances affecting the validity of a jury trial waiver." (*People v. Jones*, *supra*, 26 Cal.App.5th at p. 435, fn. 12.) Second, the rule discussed in *Jones* has no application under the facts of this case. This case did not involve a joint trial or the admissibility of a

codefendant's statement against another codefendant. (*Ibid.*)  Finally, defendant presents no argument that, under the facts of this case, the Evidence Code would have applied differently in a jury trial than in a bench trial.  As the People appropriately state, "*Jones* is not authority for the proposition that an attorney's alleged failure to advise her client about evidentiary matters is at all relevant to a jury waiver analysis"; "[t]he Evidence Code still applies in bench trials."

For the foregoing reasons, we conclude the trial court properly found that defendant's jury waiver was knowingly, voluntarily, and intelligently made.

DISPOSITION

The judgment is affirmed.


/s/ _____
Robie, Acting P. J.


We concur:


/s/ _____
Earl, J.


/s/ _____
Boulware Eurie, J.